John F. Kurtz, Jr., ISB No. 2396
Michelle R. Points, ISB No. 6224
HAWLEY TROXELL ENNIS & HAWLEY LLP
877 Main Street, Suite 1000
P.O. Box 1617
Boise, ID 83701-1617
Telephone:  208.344.6000
Facsimile:  208.954.5232
Email: jkurtz@hawleytroxell.com
          mpoints@hawleytroxell.com

Attorneys for Plaintiff R. WAYNE KLEIN, the
Court-Appointed Receiver of Trigon Group, Inc.
and for the assets of Daren L. Palmer

## UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| R. WAYNE KLEIN, the Court-Appointed Receiver of Trigon Group, Inc. and for the assets of Daren L. Palmer, | Case No. _____ |
| Plaintiff, | COMPLAINT TO AVOID FRAUDULENT TRANSFERS FOR CONSTRUCTIVE TRUST AND OTHER PROVISIONAL REMEDIES AND FOR DAMAGES |
| vs. | |
| NO LIMIT, INC., an Idaho corporation, operating under the assumed business name of PIANO GALLERY, | |
| Defendant. | |

   Plaintiff R. Wayne Klein, the Court-Appointed Receiver (the "Receiver") of Trigon

Group, Inc. ("Trigon") and all of the assets of Daren L. Palmer (the "Receivership Entities"

and/or "Palmer"), by and through his undersigned counsel, for his Complaint states and alleges

as follows:

COMPLAINT TO AVOID FRAUDULENT TRANSFERS FOR CONSTRUCTIVE TRUST
AND OTHER PROVISIONAL REMEDIES AND FOR DAMAGES - 1

## NATURE OF THE PROCEEDING

1.      On February 26, 2009, the Securities and Exchange Commission (the "SEC") filed a Complaint against Trigon and Palmer in United States District Court for the District of Idaho ("District Court"), Case No. Civ. No. 09-075-S-EJL ("SEC Action") and the Commodity Futures Trading Commission (the "CFTC") filed a Complaint against Trigon and Palmer in the District Court, Case No. Civ. No. 09-075-S-EJL ("CFTC Action").  These suits allege, among other things, that Trigon and Palmer operated an investment program in violation of the registration, licensing and anti-fraud requirements of federal securities and commodities laws.  In essence, the SEC and the CFTC allege that Trigon and Palmer engaged in a Ponzi scheme whereby millions of dollars were fraudulently taken from investors.

2.      On February 26, 2009, the Receiver was appointed by the District Court to act as receiver in connection with the SEC Action and the CFTC Action.

3.      Since at least 1997, Palmer and Trigon operated a classic Ponzi scheme by using funds obtained from investors through violations of the securities laws and/or commodity laws and using the funds from new investors to pay bogus returns to earlier investors.  Palmer and Trigon recruited investors through material misrepresentations and omissions.  By engaging in this conduct, Palmer and Trigon violated the securities registration, antifraud, and broker-dealer registration provisions of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") and violated the anti-fraud provisions of the Commodity Exchange Act ("CEA") and the requirement under the CEA to register as a commodity pool operator.

4.      This action is brought by the Receiver as part of his continuing duty to recapture and return funds invested in Trigon that were diverted by Trigon and Palmer in the course of

their massive Ponzi scheme and to set aside fraudulent transfers and fraudulent conveyances, for a constructive trust, for an accounting and to recover the money and property received by the Defendant. Specifically, the Receiver in this action seeks to recover a fraudulent transfer Trigon made to Defendant No Limit, Inc., in the amount of $33,750, plus prejudgment interest from the date of transfer, December 21, 2007, at a rate of 12% per annum.

## THE PARTIES

5.     Defendant No Limit, Inc. is an Idaho corporation, with offices in Pocatello and Idaho Falls, Idaho. At all relevant times, Defendant No Limit, Inc. has been operating under the assumed business name of "Piano Gallery." Defendant No Limit, Inc. shall hereinafter be referred to as "Defendant" or "Piano Gallery."

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the subject matter of this lawsuit because this lawsuit is ancillary to the SEC Action and the CFTC Action and the appointment of the Receiver by this Court.

7.     Venue is proper in this Court under 28 U.S.C. § 1391.

## THE RECEIVER AND STANDING

8.     On February 26, 2009, the District Court entered an Order Appointing a Receiver and Staying Litigation pursuant to which the Receiver was appointed as  receiver of Trigon, together with any and all subsidiaries and affiliated entities, including but not limited to Palmer Trading & Investments LLC; Blackrock Limited, LLC; Pinnacle Company LLC; and Canterbury Court Properties, LLC (collectively, the "Companies"). Pursuant to that Order, the Receiver was to take control of the Companies' funds, assets and property wherever situated, and is fully authorized to pursue this action against the Defendant.

COMPLAINT TO AVOID FRAUDULENT TRANSFERS FOR CONSTRUCTIVE TRUST
AND OTHER PROVISIONAL REMEDIES AND FOR DAMAGES - 3

9.     On February 26, 2009, the District Court entered an Order in the CFTC Action

appointing the Receiver as temporary receiver for all of the assets of Palmer and Trigon and the

assets of their affiliates and subsidiaries with the full power of an equity receiver.  Pursuant to

that Order, the Receiver was to assume full custody, control, and possession of all the funds,

property, mail and other assets of, in the possession of, or under the control of the Defendant and

the Companies and is fully authorized to pursue this action against the Defendant.

## THE FRAUDULENT PONZI SCHEME

10.     Trigon was a Nevada corporation headquartered in Idaho Falls, Idaho.  Trigon

claimed to be an investment business that specialized in helping clients generate high annual

returns of approximately 20% to 25% per year.

11.     Daren L. Palmer ("Palmer") is an Idaho resident, who at all relevant times, was

living in Idaho Falls, Idaho.

12.     Trigon never registered any offering of its securities under the Securities Act or

the Exchange Act.

13.     Neither Trigon nor Palmer has ever been registered with the Securities and

Exchange Commission ("SEC") in any capacity and neither of them has ever been licensed to

sell securities.

14.     Beginning in 1997 and continuing through at least October 2008, Trigon and

Palmer sold securities in the form of promissory notes and investment contracts to over 55

investors in unregistered, non-exempt transactions amounting to over $60 million.  More

particularly, Trigon and Palmer violated: (i) Section 17(a)(1) of the Securities Act, 15 U.S.C.

§ 77q(a)(1) by employment of a device, scheme or artifice to defraud; (ii)  Section 17(a)(2) and

(c) of the Securities Act, 15 U.S.C. § 77q(a)(2) by committing fraud in the offer and sale of

COMPLAINT TO AVOID FRAUDULENT TRANSFERS FOR CONSTRUCTIVE TRUST
AND OTHER PROVISIONAL REMEDIES AND FOR DAMAGES - 4

securities; (iii) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5

thereunder, 17 C.F.R. § 240.10b-5 by committing fraud in connection with the purchase and sale

of securities; (iv) Section 5(a) and (c) of the Securities Act, 15 U.S.C. § 77(a) and (c) by offering

the sale of unregistered securities; and (v) Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a)

by offering and selling securities by an unregistered broker or dealer.

15.     Beginning in 1997 and continuing through at least October 2008, Palmer engaged

in acts and practices in violation of the Commodity Exchange Act.  In particular, Palmer violated

the anti-fraud provisions of Sections 4b(a)(2) and 4o(1) of the Commodity Exchange Act, 7

U.S.C. §§ 6(b)(a)(2) and 6o(1) (2006), and Section 4b(a)(1) of the CEA as amended by the Food,

Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC

Reauthorization Act, § 13102, 122 Stat. 1651 (effective June 18, 2008) to be codified at 7 U.S.C.

§ 6(b)(a)(1).  Palmer also acted as a commodity pool operator of a commodity pool without

being registered as such in violation of Section 4m(l) of the CEA, 7 U.S.C. § 6m(l) (2006).

16.     At all relevant times, Palmer was an agent of Trigon and acted within the scope of

his employment.  As a result, Trigon is liable for Palmer's conduct pursuant to Section

2(a)(1)(B) of the CEA, 7 U.S.C. § 2(a)(1)(B).

17.     Palmer marketed himself and Trigon by representing that he used a complex

trading strategy through which he invested in indexes, S&P 500 options or futures, currency

futures, and stocks in a way that generated consistent annual returns of 20% or better.

18.     Palmer touted his reputation in the Idaho Falls community as an honest family

man with a long record of producing high returns for investors.  Palmer told some investors that

he had been generating annual returns of 20% or greater for more than 12 years.

COMPLAINT TO AVOID FRAUDULENT TRANSFERS FOR CONSTRUCTIVE TRUST
AND OTHER PROVISIONAL REMEDIES AND FOR DAMAGES - 5

19.      Palmer described his trading program as difficult to understand but one that operated like a hedge fund.  Palmer explained that the investor's principal would be combined with those of other investors and traded as a single fund.

20.      Palmer told some investors that he was licensed to sell securities when in fact he was never registered or licensed to do so.

21.      Palmer guaranteed high returns using his strategy, regardless of market conditions, with no risk to investors' principal investments.

22.      Palmer evidenced most of the investment monies he received with promissory notes that he signed as either an individual or as President of Trigon.

23.      Palmer also entered into verbal investment contracts, which promised payments of 20% returns or greater.

24.      Palmer told investors that he would retain a portion of the generated profits but actually paid himself a set amount of $25,000 to $35,000 per month.

25.      Approximately $6.8 million was deposited into trading accounts, representing only 10.07% of the total amount Palmer and Trigon received from investors.  However, Palmer often withdrew portions of the amounts deposited with no trading ever taking place and the amounts withdrawn by Trigon from such trading activity exceeded the amounts obtained from trading activity.

26.      Of the investor money deposited in Trigon accounts, Palmer spent more than $6 million on his personal home expenses and construction costs.

27.      Palmer also spent over $6 million paying himself a salary and paying for personal expenses including credit cards, art, jewelry, vehicles, trailers, snowmobiles and for community

donations.  Palmer also used investor monies to charter private airplanes and for business expenses.

28.     Despite attempts to maintain an image of success to attract additional investors, on December 15, 2008, Palmer told a group of concerned Idaho Falls investors that, through his trading program, he had lost virtually all of the invested funds.

29.     In or around January of 2009, Palmer admitted to investors that he had extinguished all funds and had been running a Ponzi scheme for many years.

30.     Although Palmer provided investors with statements showing trading profits, the payments made to investors were actually came from the principal investments of later investors.

31.     Later investors were not informed that Palmer would use their principal investment to pay returns to earlier investors and no investors were told Palmer would use their principal investments to make payments to himself or for real estate purchases and construction.

32.     Palmer has admitted to using investor funds to pay his salary, personal credit cards and for the payment of his personal residence construction costs and to purchase snowmobiles.

33.     Although Palmer collected at least $68 million in investor funds, he used only a fraction of those amounts for trading purposes and used the vast majority to pay personal expenses and to pay phony returns to earlier investors.

34.     Participants in the investment program invested over $68 million with Palmer, more than $46 million of which was used to pay phony returns.

35.     The Ponzi scheme operated by Trigon and Palmer was conducted by Trigon and Palmer with the actual intent to defraud numerous investors.

COMPLAINT TO AVOID FRAUDULENT TRANSFERS FOR CONSTRUCTIVE TRUST AND OTHER PROVISIONAL REMEDIES AND FOR DAMAGES - 7

## AMOUNTS RECEIVED BY DEFENDANT

36.     On December 21, 2007, Piano Gallery received a check made payable to "Piano Gallery" in the amount of $33,750.00 drawn on the bank account of Trigon.

37.     This payment was purportedly for the purchase of a piano by Daren and Michelle Palmer ("Piano").

38.     The Piano was never delivered to Daren or Michelle Palmer and, based on information and belief, the Receiver alleges that Piano Gallery remains in possession and/or control of that Piano.

## FIRST CLAIM FOR RELIEF
### (For Avoidance and Recovery of Fraudulent Transfers and Damages)

39.     The Receiver restates and incorporates by this reference paragraphs 1 through 38 above, as though set forth herein in full.

40.     The payment made by Trigon to Defendant Piano Gallery on December 21, 2007 was made with actual intent to hinder, delay or defraud Trigon's creditors.  These creditors, which mostly consist of innocent investors, gave money to Trigon with the belief that the money was being invested profitably on their behalf.  The transfer was made without receiving reasonably equivalent value in exchange as nothing was provided to Trigon in exchange for the payment, when Trigon was either insolvent or had become insolvent as a result of such transfers.

41.     Trigon was never the intended recipient of the Piano from Defendant Piano Gallery.

42.     Defendant Piano Gallery never delivered the Piano to Trigon or anyone else and remains in physical possession of that Piano.

43.     The payment made by Trigon to Defendant Piano Gallery is avoidable by the Receiver under applicable law, including Idaho Code §§ 55-913, 55-914 and 55-916.

COMPLAINT TO AVOID FRAUDULENT TRANSFERS FOR CONSTRUCTIVE TRUST AND OTHER PROVISIONAL REMEDIES AND FOR DAMAGES - 8

44.     On September 3, 2009, the Receiver sent a written demand to Defendant Piano Gallery that Defendant Piano Gallery pay Receiver the amount of $33,750 and Defendant Piano Gallery refused to make any payment to the Receiver.

45.     The Receiver is entitled to damages from Defendant Piano for the sum of not less than $33,750, with interest as provided by Idaho law from that date, plus any additional amounts proven at the trial of this case.

**SECOND CLAIM FOR RELIEF**
**(For Constructive Trust and Other Provisional Remedies Against Defendant)**

46.     The Receiver restates and incorporates by this reference paragraphs 1 through 45 above, as though set forth herein in full.

47.     By reason of the facts set forth above, Defendant Piano Gallery was the recipient of monies wrongfully and fraudulently obtained by Trigon and thereby diminished the amounts available to pay the creditors of Trigon.

48.     Defendant has been unjustly enriched as a result of the wrongful and fraudulent acts to the detriment of the creditors of Trigon.

49.     Accordingly, in equity, a constructive trust should be impressed upon the assets acquired by Defendant with the monies transferred to it by Trigon.

50.     The Receiver is also entitled to one or more of the additional remedies provided for pursuant to Idaho § 55-916 (b) and (c).

**PRAYER FOR RELIEF**

WHEREFORE, the Receiver prays for judgment against Defendant No Limit, Inc. ("Piano Gallery"), as follows:

COMPLAINT TO AVOID FRAUDULENT TRANSFERS FOR CONSTRUCTIVE TRUST AND OTHER PROVISIONAL REMEDIES AND FOR DAMAGES - 9

1.      For judgment in an amount equal to payment received by Defendant in the

amount of $33,750, plus interest at the rate of 12% per annum pursuant to Idaho Code § 28-22-

104(1) from the date of such payment until judgment is entered.

2.      A judgment imposing a constructive trust in favor of the Receiver over all monies

and assets obtained with monies received from Trigon by Defendant.

3.      For post judgment interest as allowed by Idaho law.

4.      For costs of suit, including reasonable costs and attorney fees.

5.      For such other and further relief as the Court may deem just and proper.

DATED THIS 13<u>th</u> day of November, 2009.

HAWLEY TROXELL ENNIS & HAWLEY LLP


By ____/s/_____
         Michelle R. Points, ISB No. 6224
         Attorneys for Plaintiff R. WAYNE KLEIN, the
         Court-Appointed Receiver of Trigon Group,
         Inc. and for the assets of Daren L. Palmer

COMPLAINT TO AVOID FRAUDULENT TRANSFERS FOR CONSTRUCTIVE TRUST
AND OTHER PROVISIONAL REMEDIES AND FOR DAMAGES - 10